# EXHIBIT A

LAW OFFICE OF
DAVID J. WEINSOFF
138 Ridgeway Avenue
Fairfax, California 94930
tel. 415·460·9760
david@weinsofflaw.com

*Via Certified Mailing – Return Receipt*

June 28, 2024

Michael Harner, CEO
Managing Agent
David Bruce Winery, Inc.
21439 Bear Creek Road
Los Gatos, California 95033-9429

Re:   **Notice of Violations and Intent to File Suit Under the Federal Water Pollution Control Act (Clean Water Act)**

Dear Mr. Harner and Managing Agent:

**NOTICE OF ALLEGED VIOLATIONS**

  This Notice is provided on behalf of California River Watch ("River Watch") in regard to violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA" or "the Act"), that River Watch believes are occurring at David Bruce Winery ("Winery"), located at 21439 Bear Creek Road, in Los Gatos, California. Notice is being sent to you as the responsible owners, operators, and managers of the Winery and real property. This Notice addresses the violations of the CWA, including violations of the terms of the General California Industrial Storm Water Permit ("IGP"), and the unlawful discharge of pollutants from the Winery "directly" to Newell Creek a water of the United States (*see* August 13, 2015, Notice of Intent ("NOI")). The watershed in which the Winery is located is impaired under CWA § 303(d) for dissolved oxygen (low dissolved oxygen); nitrate, nitrite, total nitrogen, dissolved oxygen, temperature, and total phosphorus (nutrients) - (*see* 2022-2023 Annual Report's "List of Identified Pollutants within the Impaired Watershed").

  CWA § 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless such discharge complies with various enumerated sections of the Act. Among other things, CWA § 301(a) prohibits discharges not authorized by, or in violation of, the terms of an individual National Pollutant Discharge Elimination System ("NPDES") permit or a general NPDES permit issued pursuant to CWA § 402(p), 33 U.S.C. § 1342(p). CWA § 402(p) establishes a framework for regulating storm water discharges under the NPDES permitting program. States with approved NPDES permitting programs are authorized under this section to regulate storm water discharges through permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all storm water dischargers. Pursuant to CWA § 402, the Administrator of the U.S. Environmental Protection Agency ("EPA") has authorized

Notice of Violations Under CWA – Page 1

California's State Water Resources Control Board ("SWRCB") to issue NPDES permits including general NPDES permits in California.

The SWRCB, pursuant to CWA § 402(p), elected to issue a statewide IGP for industrial dischargers and issued NPDES Permit No. CAS000001, SWRCB Order No. 92-12-DWQ, amended significantly by Order No. 2014-0057-DWQ on April 1, 2014 (effective July 1, 2015) with subsequent amendments in 2015 and 2018. In order to discharge storm water lawfully in California, industrial dischargers must comply with the terms of the IGP or obtain an individual NPDES permit and comply with its terms.

CWA § 505(b) requires a citizen to give notice of the intent to file suit sixty (60) days prior to the initiation of a civil action under CWA § 505(a). Notice must be given to the alleged violator, the EPA, and the state in which the violations occur. As required by the CWA, this Notice provides notice of the violations that have occurred and continue to occur at the Winery. Consequently, David Bruce Winery, Inc. (the "Discharger") as owner and operator of the Winery, is placed on formal notice by River Watch that after the expiration of sixty (60) days from the date of receipt of this Notice, River Watch will be entitled to bring suit in the United States District Court against the Discharger for continuing violations of an effluent standard or limitation, NPDES permit condition or requirement, or Federal or State Order issued under the CWA (in particular, but not limited to, CWA § 301(a), § 402(p), and § 505(a)(1)), as well as the failure to comply with applicable water quality standards set forth in the California Toxics Rule ("CTR") and the Central Coast Regional Water Quality Control Board ("RWQCB-CC") Water Quality Control Plan or "Basin Plan."

The CWA requires that any notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto shall include sufficient information to permit the recipient to identify the following:

1. **The Specific Standard, Limitation, or Order Alleged to Have Been Violated.**

To comply with this requirement, River Watch notices the Discharger of ongoing violations of the substantive and procedural requirements of CWA § 402(p) and violations of NPDES Permit No. CAS000001 (IGP) relating to services and operations taking place at the Winery.

The Discharger, rather than seeking coverage for the Winery under an individual NPDES permit, filed a Notice of Intent (NOI) agreeing to comply with the terms and conditions of the IGP. The SWRCB processed the NOI on or about March 24, 1998 and the Winery is assigned Waste Discharge Identification ("WDID") number 3 44I013834. River Watch, on the basis of eye-witness reports, records publicly available, and/or records in the possession and control of the Discharger, alleges that in the continuing industrial operations taking place at the Winery, the Discharger has failed to comply from Annual Reporting Year 2019-2020 to the present with the strict terms and conditions of the IGP.

In addition to the alleged violations of the terms and conditions of the IGP, River Watch alleges violations of the provisions of discharge prohibitions contained in the RWQCB-CC's Basin

Plan, which are incorporated by reference as part of the compliance obligations imposed on the Winery under the IGP (IGP Section I.C.29).

2. **The Activity Alleged to Constitute a Violation.**

Full compliance with the mandates of the IGP is not a mere statutory and regulatory exercise. The lands in and surrounding the watershed in which the Winery is located produce a harvest of unparalleled bounty drawing acclaim worldwide. Failing to care for this critical environment as alleged in this Notice is a violation not only of law, but an abrogation of the trust we demand of Santa Cruz County landowners.

The Winery is classified on the NOI and in the Storm Water Pollution Prevention Plan ("SWPPP," *revised* August 11, 2011) Section 2 ("Standard Industrial Classification and Narrative") as SIC Code 2084 ("Wines, Brandy, and Brandy Spirits"). Because there is no public record of a SWRCB or RWQCB-CC exemption from the collecting and analyzing of the range of pollutants discharged from the Winery site, without implementing and properly reporting the full range of required sampling and analysis there is no accurate measure by which to determine whether required Best Management Practices ("BMPs") under IGP Section X.H and identified in SWPPP Section A.4.1 – 4., A.5, and A.6.1 -3[1] are both implemented at the Winery and effective to ensure there are no unlawful discharge(s) of pollutants from the Winery to Newell Creek. The Winery's SWPPP states that areas of industrial activity include the "Outside Process Areas;" "Loading & Unloading Area(s);" "Outside Machinery Storage;" and "Outside Non-Machinery Storage" (SWPPP Section 5 "BMP Summary Table By Area/Activity - Potential Pollutant Sources/Industrial Activities/Operational Practices").

Having agreed to its terms, the Discharger has a continuing burden to demonstrate compliance with each and every applicable provision of the IGP. River Watch alleges the following actions and inactions as violations of the IGP:

a. <u>Failure to Properly Sample and Monitor Storm Water Discharges</u>

Under the IGP, the Discharger is required to comply with all terms of the IGP including, but not limited to, the following:

Storm water discharge samples are required to be collected from a Qualified Storm Event ("QSE") four (4) times per year – "two (2) QSEs within the first half of each reporting year (July 1 to December 31), and two (2) QSEs within the second half of each reporting year (January 1 to June 30)" (IGP Section XI.B.2).[2]

---

[1] The SWPPP (Section 4) on SMARTS states repeatedly that anticipated new BMPs under a sub-heading "Existing BMPs – Revised New BMPs" will be imposed under "Implementation Schedule: By the start of the 2001-2002 official wet season." River Watch was unable to identify these "Revised New BMPs" in a SWPPP on the SMARTS database as of the date of this Notice Letter.

[2] River Watch notes that the Winery's most current SWPPP available on SMARTS, predating SWRCB Order No. 2014-0057-DWQ, does not include these sampling requirements. SWPPP Section B.4 "Storm Water Monitoring Plan – Storm Water Sampling and Analysis" currently requires storm water samples

River Watch, following review of the SWRCB's SMARTS reporting database, contends the Discharger has failed, and continues to fail, to comply with the sampling and monitoring requirements during Annual Reporting Years 2019-2020 through 2022-2023 as follows:

Annual Reporting Year 2022-2023:

- In violation of the IGP, only two (2) of the four (4) storm water samples required were reported on SMARTS. The Winery "certified" on the Annual Report in response to Question Information #3 that it "sample[d] the required number of Qualifying Storm Events during the reporting year for all locations, in accordance with Section XI.B," but provided no explanation in the Annual Report "Summary of Explanations" for its alleged failure to do so.

- The Winery's laboratory reports on SMARTS identify sample dates of December 1, 2022, and December 27, 2022. The Soil Control Lab December 1st report states sampling occurred at 9:30am from Culvert 1 and 9:50am from Culvert 2 (*see* SMARTS Attachment ID 3426270 and 3426272). The Soil Control Lab December 22nd report states sampling occurred at Discharge #1 and Discharge #2 at the same sample time, 10:20am (*see* SMARTS Attachment ID 3426272). No document on SMARTS provides the "Estimated Discharge Date/Time." In the absence of this Date/Time, it is not possible to accurately determine whether any of the samples were collected within four (4) hours of "[t]he start of the discharge; or, [t]he start of facility operations if the QSE occurs within the previous 12-hour period (e.g., for storms with discharges that begin during the night for facilities with day-time operating hours) …" as required by IGP Section XI.B.5.

- The certified Annual Report is dated August 10, 2023, in violation of IGP Section XVI.A, which requires that "[t]he Discharger shall certify and submit via SMARTS an Annual Report no later than July 15th following each reporting year …"

Annual Reporting Year 2021-2022:

- In violation of the IGP, only three (3) of the four (4) storm water samples required were reported on SMARTS. The Winery "certified" on the Annual Report in response to Question Information #3 that it "sample[d] the required number of Qualifying Storm Events during the reporting year for all locations, in accordance with Section XI.B," but provided no explanation in the Annual Report "Summary of Explanations" for its alleged failure to do so.

- The Winery's "Annual Report Form 4 (Continued) – Monthly Visual Observations of Storm Water Discharges" on SMARTS (Attachment Id 3426377) identifies sample dates of October 25, 2021, January 3, 2022 and April 11, 2022. The report states that the October 25th sampling occurred at both Discharge #1 and Discharge

---

"during the first rainstorm or the storm water season (October -May) and from one additional rainstorm before May 31."

#2 at the same sample time, 11:30am; that the January 3rd sampling occurred at both Discharge #1 and Discharge #2 at the same sample time, 10:15am; and that the April 11th sampling occurred at both Discharge #1 and Discharge #2 at the same sample time, 8:00am. Neither the "Annual Report Form 4" nor any other document on SMARTS provides the "Estimated Discharge Date/Time." In the absence of this Date/Time, it is not possible to accurately determine whether any of the samples were collected within four (4) hours of "[t]he start of the discharge; or, [t]he start of facility operations if the QSE occurs within the previous 12-hour period (e.g., for storms with discharges that begin during the night for facilities with day-time operating hours) …" as required by IGP Section XI.B.5.

Annual Reporting Year 2020-2021:

- In violation of the IGP, only one (1) of the four (4) storm water samples required were reported on SMARTS. The Winery "certified" on the Annual Report in response to Question Information #3 that it "sample[d] the required number of Qualifying Storm Events during the reporting year for all locations, in accordance with Section XI.B," but provided no explanation in the Annual Report "Summary of Explanations" for its alleged failure to do so.

- The Winery's laboratory report on SMARTS identifies a sample date of January 27, 2021. The Soil Control Lab January 27th report states sampling occurred at Discharge #1 at 9:20am and at Discharge #2 at 9:25am (*see* SMARTS Attachment ID 2930858). No document on SMARTS provides the "Estimated Discharge Date/Time." In the absence of this Date/Time, it is not possible to accurately determine whether the sample was collected within four (4) hours of "[t]he start of the discharge; or, [t]he start of facility operations if the QSE occurs within the previous 12-hour period (e.g., for storms with discharges that begin during the night for facilities with day-time operating hours) …" as required by IGP Section XI.B.5.

Annual Reporting Year 2019-2020:

- In violation of the IGP, only one (1) of the four (4) storm water samples required were reported on SMARTS. The Winery stated in Annual Report Question Information #3 ("Summary of Explanations") that "DBW sampled one storm water event in December 2019. Starting March of 2020 the winery has been on minimal staff & major winemaking operations have stopped." River Watch alleges that during the Annual Reporting year, QSE(s) occurred during the first half of the annual reporting year and the initial months of the second half of the annual reporting year during the Winery's operating hours sufficient for the Discharger to monitor and collect the full complement of required storm water samples.

- The Winery's laboratory report on SMARTS identifies a sample date of December 2, 2019. The Soil Control Lab December 2nd report states sampling occurred at both Discharge #1 and Discharge #2 at the same sample time, 11:00am (*see* SMARTS Attachment ID 2717318). No document on SMARTS provides the

"Estimated Discharge Date/Time." In the absence of this Date/Time, it is not possible to accurately determine whether the sample was collected within four (4) hours of "[t]he start of the discharge; or, [t]he start of facility operations if the QSE occurs within the previous 12-hour period (e.g., for storms with discharges that begin during the night for facilities with day-time operating hours) …" as required by IGP Section XI.B.5.

- The certified Annual Report is dated August 13, 2020, in violation of IGP Section XVI.A, which requires that "[t]he Discharger shall certify and submit via SMARTS an Annual Report no later than July 15th following each reporting year …"

b. <u>Failure to Sample for Full Range of Potential Pollutants</u>

River Watch, following review of the Winery's Annual Reports for the 2019-2020 through 2022-2023 annual reporting years, and the SWPPP provisions identifying the Winery's procedures for sampling and monitoring of storm water discharges (*see* SWPPP Section B), contends the Discharger, when conducting Winery sampling and monitoring, fails to sample and monitor for the full range of potential pollutants required by the IGP.

The IGP provides in Section X.G.2.a.ii. that a "Discharger shall ensure that the SWPPP includes a narrative assessment of all areas of industrial activity with potential pollutant sources. At a minimum, the assessment shall include: … [t]he pollutants likely to be present in industrial storm water discharges and authorized NSWDs."  In addition to the above, the IGP provides in Section III.C. "Discharge Prohibitions" that "[i]ndustrial storm water discharges and authorized NSWDs that contain pollutants that cause or threaten to cause pollution, contamination, or nuisance as defined in section 13050 of the Water Code, are prohibited." Water Code § 13050 provides, in relevant part:

(e) "Waters of the state" means any surface water or groundwater, including saline waters, within the boundaries of the state.

(k) "Contamination" means an impairment of the quality of the waters of the state by waste to a degree which creates a hazard to the public health through poisoning or through the spread of disease. "Contamination" includes any equivalent effect resulting from the disposal of waste, whether or not waters of the state are affected.

(l) (1) "Pollution" means an alteration of the quality of the waters of the state by waste to a degree which unreasonably affects either of the following:
 (A) The waters for beneficial uses.
 (B) Facilities which serve these beneficial uses.
(2) "Pollution" may include "contamination."

(m) "Nuisance" means anything which meets all of the following requirements:
(1) Is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property.

(2) Affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal.
(3) Occurs during, or as a result of, the treatment or disposal of wastes.

River Watch alleges that the discharge of the potential pollutants copper and zinc from industrial sources, such as on-site materials containing zinc or copper and transportation-related activities taking place at the Winery, are above CTR limits and therefore prohibited as "contamination" or "nuisance" under the IGP. River Watch asserts that targeted monitoring/sampling is required at the Winery site (including parking lots, vehicle storage area(s), or other transportation surfaces) to determine whether, and if so to what extent, zinc and copper are being discharged from the Winery to Newell Creek.[3] As noted above, the Winery's SWPPP states that areas of industrial activity include the "Outside Process Areas"; "Loading & Unloading Area(s)"; "Outside Machinery Storage"; and "Outside Non-Machinery Storage" (SWPPP Section 5 "BMP Summary Table By Area/Activity - Potential Pollutant Sources/Industrial Activities/Operational Practices").

In the absence of any sampling for zinc or copper at the Winery, however, it is not possible to determine whether the considerable number of vehicles, both owned/operated and maintained by the Discharger or its contractors and employees, as well as those driven separately by private vendors involved in industrial activities at the Winery site, are adequately maintained.

c. Failure to Ensure Employees are Properly Trained

The IGP's minimum BMPs require each discharger to maintain an Employee Training Program. The IGP mandates that "[t]he Discharger shall: i. Ensure that all team members implementing the various compliance activities of this General Permit are properly trained to implement the requirements of this General Permit, including but not limited to: BMP implementation, BMP effectiveness evaluations, visual observations, and monitoring activities …" (IGP Section X.H.1.f.i). The Winery's SWPPP (Section 6.4 "Employee Training") states that it "has an existing program of employee training," but fails to contain comprehensive provisions detailing an employee training program. The failure to comply with the requirements of the IGP, as specifically detailed above in Sections 2.a and 2.b of this Notice and incorporated herein by reference, resulted in the Discharger violating and continuing to violate IGP Section X.H.1.f.i.

d. Potential Failure to Monitor Discharges from On-Site Ponds.

River Watch is concerned that the pond located at the Winery site, identified in the SWPPP as a "lined wastewater treatment pond" (SWPPP Section 4.4.7), may be insufficient to hold all regulated storm water prior to evaporation, any reuse or recycling at the Winery; or if not properly

---

[3] River Watch notes the IGP provides no blanket exclusion for on-site vehicle use. The IGP, Appendix 2 ("Instructions For No Exposure Certification (NEC)" mirrors text from the EPA's "Guidance Manual for Conditional Exclusion from Storm Water Permitting Based on 'No Exposure' of Industrial Activities to Storm Water" (EPA 833-B-00-001, June 2000) to provide that "Adequately maintained vehicles" are among the list of "Industrial Materials/Activities Not Requiring a Storm-Resistant Shelter" (*see*, Appendix 2.B.4.d.).

Notice of Violations Under CWA – Page 7

lined may discharge regulated storm water to surface or groundwater. In the absence of sampling to ensure there is no discharge of industrial storm water from the "pond," for example, River Watch asserts the Discharger would be incorrect in answering "No" to "Annual Report Question Information #10 on the Annual Reports which inquires "Has any contained storm water been discharged from the facility this reporting year?" River Watch asserts that sampling of any industrial storm water is required at the point of discharge from the Winery site. The Discharger should compile a "water mass balance" to determine whether there is percolation to groundwater or complete an array of "Color-Infrared (CIR) Aerial Photographs" demonstrating the "pond" does not have subsurface discharge. This environmental protection action should be included as an additional requirement in the *"Annual Comprehensive Facility Compliance Evaluation."*

e. Failure to Prepare and Implement an Adequate SWPPP and Site Map

Although the Discharger, in the SWPPP, has identified certain facility-specific activities taking place at the Winery known to create pollution, it fails, in the absence of a comprehensive updated "Monitoring Implementation Plan" (IGP Section X.A.8), to test for the additional parameters associated with these facility-specific industrial pollutants. For example, while transportation activities take place at the Winery, the SWPPP as discussed above fails to require testing for zinc and copper which are known pollutants associated with tires, brake pads, fuels and lubricants.

The Winery Site Maps, which state that they were revised July 11, 2022 (*see* SMARTS Attachment ID 346275) fail to clearly and comprehensively include all of the requirements of IGP Section X.E "appropriate to ensure the map[s are] clear, legible and understandable." Specifically, the maps do not "[i]dentify all industrial storage areas and storage tanks, shipping and receiving areas and storage tanks, fueling areas, vehicle and equipment storage/maintenance areas, material handling and processing areas, waste treatment and disposal areas, dust or particulate generating areas, cleaning and material reuse areas, and other areas of industrial activity that may have potential pollutant sources" (IGP Section X.E.3.f).

f. Failure to Comply with Receiving Water Limitations and Discharge Prohibitions

The IGP requires dischargers to ensure that industrial storm water discharges and authorized NSWDs do not: (a) cause or contribute to an exceedance of any applicable water quality standards in "Newell Creek" (IGP Sections I.E.,37, VI.A.), (b) adversely affect human health or the environment (IGP Section VI.B.) and, (c) do not contain pollutants in quantities that threaten to cause pollution or a public nuisance (IGP Section III.C., VI.C.). The Discharger provides no evidence of complete compliance with these requirements for the Winery's <u>transportation-related areas</u>.

g. Failure to Comply with Total Maximum Daily Loads (TMDLs) Requirements

Industrial facilities seeking coverage under the IGP are required to submit data and/or information, prepared by a Qualified Industrial Storm Water Practitioner ("QISP"), demonstrating that the facility (1) eliminated all exposure to storm water of the pollutants for which the water body is impaired, has documented the procedures taken to prevent exposure onsite, and has

retained such documentation with the SWPPP at the Winery; (2) the pollutant for which the water body is impaired is not present at the Winery; or (3) the discharge of any listed pollutant will not cause or contribute to an exceedance of a water quality standard (IGP Section VII.B).

While this requirement is mandatory for new facilities applying for coverage under the IGP, River Watch <u>recommends</u> that all industrial facilities, as good environmental stewards of their land, provide the SWRCB and RWQCB with documentation demonstrating continuing compliance with this requirement.

3.   **The Person or Persons Responsible for the Alleged Violation.**

The entity responsible for the alleged violations is David Bruce Winery, Inc. as owner and/or operator of the Winery and real property underlying the Winery.

4.   **The Location of the Alleged Violation**

The location of the various violations is the permanent address of the Winery at 21439 Bear Creek Road in Los Gatos, California, including the waters of Newell Creek – a water of the United States.

5.   **The Date or Dates of Violation or a Reasonable Range of Dates During Which the Alleged Activity Occurred.**

The range of dates covered by this Notice is from June 28, 2019, to the present. This Notice includes all violations which occur after the range of dates covered by this Notice up to the end of trial. Some of the violations are continuous in nature, therefore each day constitutes a violation.

6.   **The Full Name, Address, and Telephone Number of the Person Giving Notice.**

The entity giving this Notice is California River Watch, an Internal Revenue Code § 501(c)(3) nonprofit, public benefit corporation organized under the laws of the State of California, with headquarters located in Sebastopol, California. River Watch's mailing address is 290 South Main Street, #817, Sebastopol, California 95472. River Watch is dedicated to protecting, enhancing and helping to restore surface water and ground waters of California including coastal waters, rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, and to educating the public concerning environmental issues associated with these environs.

River Watch may be contacted via email: US@criverwatch.org, or through its attorneys. River Watch has retained legal counsel with respect to the issues set forth in this Notice. All communications should be directed to:

    David Weinsoff, Esq.
    Law Office of David Weinsoff
    138 Ridgeway Avenue
    Fairfax, CA 94930

Notice of Violations Under CWA – Page 9

Tel. 415-460-9760
Email: david@weinsofflaw.com

**REMEDIAL MEASURES REQUESTED**

River Watch believes that at a minimum, implementing the requirements of the IGP as outlined in this Notice is necessary in order to bring the Winery into compliance with the CWA and reduce the biological impacts from its non-compliance upon public health and the environment.

**CONCLUSION**

The violations set forth in this Notice affect the health and enjoyment of members of River Watch who reside and recreate in the affected community. Members of River Watch may use the affected watershed for recreation, hiking, photography, nature walks and/or the like. Their health, use, and enjoyment of this natural resource is specifically impaired by the alleged violations of the CWA as set forth in this Notice.

The IGP, in the very first "Standard Condition," states that "Dischargers shall comply with all standard conditions in this General Permit. Permit noncompliance constitutes a violation of the Clean Water Act and the [California] Water Code and is grounds for enforcement action and/or removal from IGP coverage" (IGP Section XXI.A). The gravity of ensuring that the Annual Reports submitted to the State of California are complete and accurate is highlighted by the IGP requirement that the person signing and certifying the document certifies that "to the best of my knowledge and belief, the information submitted is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations" (IGP Section XXI.L).

CWA §§ 505(a)(1) and 505(f) provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), §1362(5). An action for injunctive relief under the CWA is authorized by 33 U.S.C. §1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $66,712.00 per day/per violation pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365; *see also* 40 C.F.R. §§ 19.1-19.4. River Watch believes this Notice sufficiently states grounds for filing suit in federal court under the "citizen suit" provisions of CWA to obtain the relief provided for under the law.

The CWA specifically provides a 60-day "notice period" to promote resolution of disputes. River Watch encourages the Discharger to contact counsel for River Watch within **20 days** after receipt of this Notice to discuss the allegations detailed in this Notice. In the absence of productive discussions to resolve this dispute, or receipt of additional information demonstrating the Winery is in compliance with the strict terms and conditions of the IGP, River Watch will have cause to file a citizen's suit under CWA § 505(a) when the **60-day** notice period ends.

Very truly yours,

*[signature]*

David J. Weinsoff

## Service List

*Via US Mail*

Michael Regan - Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N. W.
Mail Code 1101A
Washington, D.C. 20460

Martha Guzman - Regional Administrator
U.S. Environmental Protection Agency
Pacific Southwest, Region 9
75 Hawthorne Street
Mail Code ORA-1
San Francisco, CA 94105-3920

Eileen Sobeck - Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812-0100

Timothy Matz, Registered Agent
David Bruce Winery, Inc.
21439 Bear Creek Road
Los Gatos, California 95033-9429

LAW OFFICE OF
DAVID J. WEINSOFF
138 Ridgeway Avenue
Fairfax, California 94930
tel. 415·460·9760
david@weinsofflaw.com

*Via Certified Mailing – Return Receipt*

June 28, 2024

Michael Harner, CEO
Managing Agent
David Bruce Winery, Inc.
21439 Bear Creek Road
Los Gatos, California 95033-9429

Re:   Notice of Violations and Intent to File Suit Under the Federal Water Pollution Control Act (Clean Water Act)

Dear Mr. Harner and Managing Agent:

By law the enclosed Notice is required to be detailed, comprehensive, and must clearly state an intent to file suit under the Clean Water Act. As such the Notice can seem ominous and formal. We understand that receiving a notice of possible legal action is a disturbing experience. Please know that it is the policy of California River Watch to try and avoid litigation whenever possible. Many of the matters and disputes we handle are resolved by means of the parties meeting and consulting to address the issues and problems raised in the Notice.

Although we have access to public records, citizen complaints, visual inspections and water quality data, our understanding of your operation is incomplete. Because of the formal nature of the Notice letter, we are writing to you separately to ask that you please contact this office to discuss the concerns raised in the Notice and possible resolutions to those issues. California River Watch prefers compliance through cooperation rather than litigation and would welcome the opportunity to work with you in this regard. Thank you for your time and consideration.

Very truly yours,

*[signature]*
David Weinsoff